## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## PINE BLUFF DIVISION

TYSHAWN MIMS, a/k/a LAERIES HAYES,
ADC #129726                                                                                            PLAINTIFF

V.                                        5:08-cv-00178-WRW-JJV

JAMES BLACKMON, Doctor, Cummins Unit,
Arkansas Department of Correction; RORY
GRIFFIN, Head of the Infirmary, Cummins
Unit, Arkansas Department of Correction; SAVOY,
Mrs., Nurse, Cummins Unit, Arkansas Department
of Correction; and ROLAND ANDERSON, Dr.,
Correctional Medical Services                                                                        DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge William R. Wilson, Jr. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in a waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.      Why the record made before the Magistrate Judge is inadequate.

2.      Why the evidence to be proffered at the hearing before the District Judge (if such a

1

hearing is granted) was not offered at the hearing before the Magistrate Judge.

3. The details of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## **DISPOSITION**

Plaintiff filed this action, pursuant to 42 U.S.C. § 1983, alleging he has been denied adequate medical care for vision problems and headaches he has suffered since 2004. The Defendants, employees of Correctional Medical Services, filed a Motion for Summary Judgment (Doc. No. 62) seeking dismissal of the claims against them on the grounds of Plaintiff's failure to exhaust administrative remedies. Defendants have now filed a Supplemental Motion for Summary Judgment (Doc. No. 85) and further argue they have not been deliberately indifferent to Plaintiff's serious medical needs, and they have provided appropriate care and treatment for his conditions. Both Motions are supported by Briefs (Doc. Nos. 63, 86) and Statements of Material Facts (Doc. Nos. 64, 87). Plaintiff filed a Response (Doc. No. 68) to the first Motion for Summary Judgment, but has not responded to the supplemental motion on the merits.

## I. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact. FED.R.CIV.P. 56; *Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 246 (1986). Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, designate "specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e); *Mosley v. City of Northwoods*, 415 F.3d 908, 910-11 (8th Cir. 2005)("The nonmoving party may not rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.")  If the opposing party fails to carry that burden or fails to establish the existence of an essential element of its case on which that party will bear the burden of proof at trial, summary judgment should be granted. *See Celotex*, 477 U.S. at 322.  "Although it is to be construed liberally, a *pro se* complaint must contain specific facts supporting its conclusions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985).

## II.   FACTS

Plaintiff, Tyshawn Mims, has been complaining of headaches and eye pain since 2004, including seeing blue and white flashes and feelings of "some type of swelling" in his head and eyes. He states he sees floaters and squiggly lines and fears going blind.  Mr. Mims continued to experience pain even after the prison gave him glasses.  Plaintiff filed this cause of action on June 27, 2008.  According to the Complaint, Amended Complaint and accompanying attachments, he was sent to UAMS in January 2007 for a CAT scan and was told "nothing was wrong with [his] brain." He was taken to the Jones Eye Clinic on March 18, 2008, and, according to Plaintiff, no evidence of cataracts or glaucoma was found.  Mims then saw the prison physician, Dr. Blackmon, in mid-April and was given new glasses.  According to Mims, Dr. Blackmon saw what may have been evidence of cataracts.  Records indicate Dr. Blackmon saw Plaintiff at his cell and in the infirmary at various times.  Records indicate prison officials notified Mims on May 12, 2008, that he was

being referred to another eye doctor.

He seeks treatment by a medical expert or specialist to determine his illness, although physicians have examined him and told him he has no ocular illness. Mims asserts he has been the victim of "improper medical procedures and treatment" and seeks specific treatment and monetary damages.

### III.    FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

Defendants argue that Mims has failed to exhaust the administrative remedies available and failure to do so must result in dismissal of this case. In support, Defendants show that since 2004, Plaintiff has filed only two grievance appeals and both were rejected for failure to follow policy. Defendants argue that as a result of his failure to follow policy, Plaintiff did not fully exhaust administrative remedies relating to the issues in his grievances. In his Complaint, Plaintiff admits he did not exhaust his administrative remedies. (Doc. No. 2 at 3). Plaintiff has now filed untimely grievance appeals in what appears to be a result of this litigation.

In *Jones v. Bock*, 549 U.S. 199, 203-204 (2007), the United States Supreme Court considered the role that a prisoner's failure to exhaust his administrative remedies should play in the context of deciding the merits of a claim under § 1983. The Court began its analysis by noting that requiring prisoners to exhaust their administrative remedies had the positive effect of allowing prison officials "an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court" which, in turn, "has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record." *Id.*, citing *Woodford v. Ngo*, 548 U.S. 81, 89, 95 (2006).

Those purposes served as the backdrop to the Court's consideration of the exhaustion requirement, which Congress included in the Prison Litigation Reform Act (PLRA) and provides

as follows: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Failure to exhaust is "an affirmative defense under the PLRA, and inmates are not required to specifically plead or demonstrate exhaustion in their complaints." *Jones v. Bock, supra* at 216. Courts charged with determining exhaustion should do so on a case-by-case basis, with each prisoner's complaint evaluated in light of its compliance with established prison grievance procedures. *Id.* at 218-19.

Prisoners are required to exhaust all "available" remedies before seeking relief under § 1983. *Woodford v. Ngo, supra* at 85; *See* 42 U.S.C. § 1997e(a). The United States Court of Appeals for the Eighth Circuit has defined "available" as "capable of use for the accomplishment of a purpose; immediately utilizable [and] accessible." *Miller v. Norris, supra* at 740. It does not matter whether the prisoner may have subjectively believed that there was no point in pursuing his administrative remedies. *Lyon v. Vande Krol*, *supra* at 808; *Chelette v. Harris*, 229 F.3d 684, 688 (8th Cir. 2000), *cert. denied,* 531 U.S. 1156 (2001). If exhaustion is not complete by the time of the filing of the prisoner's complaint, then dismissal is mandatory. *Johnson v. Jones, supra* at 627. Prisoners have only been excused from complying with the administrative procedures when correctional officials have prevented prisoners from utilizing the procedures, or when the officials themselves have failed to comply with the administrative procedures. *Miller v. Norris, supra* at 740; *Foulk v. Charrier*, 262 F.3d 687, 697-98 (8th Cir. 2001).

The evidence now before the Court supports Defendants' position that Plaintiff failed to comply with the requirement to exhaust his administrative remedies. An affidavit executed by Robin Gibbins, Administrative Assistant to Arkansas Department of Correction Deputy Director Wendy Kelley, attests that Plaintiff failed to fully exhaust the grievances he had filed through the

final level of the appeal process before he initiated this lawsuit. Accordingly, the Court finds that Plaintiff has failed to exhaust his administrative remedies and Defendants are therefore entitled to a grant of summary judgment in their favor on this point.

## IV.     DELIBERATE INDIFFERENCE

### A.     Background

Defendants have also sought dismissal of the claims against them on the merits of the allegations of deliberate indifference, the grant of which would entitle to them to dismissal with prejudice. Defendants argue that Mims' allegations amount only to a disagreement with treatment and that his claims do not amount to a violation of Plaintiff's constitutional rights.

The Court granted Plaintiff 30 days in which to file a response to the supplemental motion (Doc. No. 83). Plaintiff has not filed a response to the pending supplemental motion or to the Defendants' Supplemental Statement of Facts.

Pursuant to Local Rule 56.1(c)[1] of the Rules of the United States District Court for the Eastern District of Arkansas, all material facts set forth in Defendants' statements of undisputed facts shall be deemed admitted unless controverted by Plaintiff's statement filed in response. Since Plaintiff has not filed a response, the Court adopts Defendants' recitations of the facts contained in Docket Entry No. 87. *See Jackson v. Arkansas Dep't of Educ., Vocational & Technical Educ. Div.*, 272 F.3d 1020, 1027 (8th Cir. 2001) ("pursuant to Local Rule 56.1(c), [plaintiff] forfeited her ability

---

[1] Plaintiff was previously notified of his responsibilities under Local Rule 5.5(c)(2), which requires him to notify the court of any change of address. Plaintiff has not complied with these requirements, and his case is subject to dismissal without prejudice for failure to comply with Local Rule 5.5(c)(2). *See also* Fed. R. Civ. P. 41(b)(district court may dismiss case for failure to prosecute or comply with court orders); *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962)(district court has power to dismiss *sua sponte* under Rule 41(b)). However, this recommendation will address the merits of the Defendants' motion because they are entitled to dismissal with prejudice.

to contest the facts presented in the Department's original summary judgment motion by her failure to respond to the Department's motion").

**B.      Facts**

On July 5, 2005, Dr. Roland Anderson approved Dr. Donald Anderson's request for plaintiff to be evaluated for glasses. On August 29, 2005, Mims saw optometrist Dr. Dunn who recommended that Mims be seen by a medical doctor, because his symptoms were most likely related to a migraine headache.  Although the unit physician then requested an ophthalmology consultation, Dr. Roland Anderson deferred the request back to the unit physician. He noted as follows: "optometrist Dr. Dunn found no abnormalities and recommended patient to see unit M.D. for headaches. No specific reason for recheck with optometry unless symptoms change." The unit physician did not send plaintiff to an ophthalmologist. (Doc. No. 87-2, pp. 1-6).

Plaintiff again complained of vision problems in December of 2005. He was treated a few times over the next few months, and then he was seen by an optometrist for a six-month follow-up on March 2, 2006. (Doc. No. 87-1, pp. 7-15)  The optometrist, Dr. Simmons, noted the visual field exams were unreliable and his intraocular pressure was normal. He recommended an ophthalmology evaluation because of plaintiff's unexplained visual field results and complaints of pain. Glasses were ordered and a consultation request to the Jones Eye Institute was made.

Plaintiff was seen again by Dr. Dunn on March 20, 2006, who noted that Plaintiff still had headaches, but they were not as severe.  He noted the visual field results were inconsistent with the prior visual field results.  Plaintiff's intraocular pressure remained within normal limits and Dr. Dunn again suggested that Plaintiff see a medical doctor for follow up. The unit physician, Dr. Doshi, noted that Plaintiff should follow up in one to two years and should wear his glasses, because he was noncompliant with his glasses prescription. (Doc. No. 87-2, pp.16-23)

During a chronic care visit on August 1, 2006, medical personnel noted Mims was not wearing his prescribed glasses. He complained of headaches and the physician noted Mims probably had a migraine with aura. The physician recommended an optometry consult and a CT of the head. Mims was seen in sick call once in September and once in October for headaches. (Doc. No. 87-2, pp. 24-33). On December 10, 2006, Plaintiff requested to have his head checked. He was seen December 12, 2006, by an LPN and a physician. He received a CT of the head with and without contrast on January 17, 2007. The results of the examination were normal. *Id.* at 34-38.

Mims was next seen at the University of Arkansas for Medical Sciences (UAMS) Jones Eye Institute on February 27, 2007. The physician made no diagnosis after his examination of Mims, and wanted further tests for glaucoma.

Mims returned to Dr. Simmons on April 19, 2007. He received a prescription for eyeglasses and a return to the Jones Eye Institute was recommended. *Id.* at 41-46. Plaintiff went to the Jones Eye Institute again on July 30, 2007. He was then considered a glaucoma suspect because of the increase in his cup to disk ratio. Mims was also diagnosed with myopia and prescribed eyeglasses. *Id.* at 47-52. He returned to the Jones Eye Institute on March 10, 2008. Again, it was noted he was a glaucoma suspect because of his physiologically large disk cupping; however, no glaucoma was present upon exam because his intra ocular pressure was normal. A follow up visit was recommended in one year. Mims continued to be seen routinely in 2008 and glasses were prescribed as needed. *Id.* at 53-79.

Mims reported to the infirmary on December 18, 2008, complaining he had been hit in the eye with an elbow while playing basketball. He was examined and two x-rays of the skull revealed no evidence of fracture or dislocation. On January 8, 2009, Dr. Blackman recommended an ophthalmology evaluation at the Jones Eye Institute. (Doc. No. 87-2, pp. 80-91) Mims went to the

Jones Eye Institute on February 23, 2009; the ophthalmologist found no evidence of retinal detachment or acute injury to the eye. He suggested that the subjective complaints may be due to occular migraines or malingering and recommended that Mims be evaluated by a neuro-ophthalmologist; otherwise, no other treatment was needed. *Id.* at 92-96. Mims was evaluated by a neuro-ophthalmologist at the Jones Eye Institute on May 7, 2009; his impression was that Mims had migraines without pain, but with visual phenomenon. Mims was reassured and triggers were discussed with him. A return visit was recommended for one year and Mims continued to be seen in the infirmary. *Id.* at 97-108.

Mims was seen by an optometrist, Dr. McKenzie, on November 18, 2009. Her notes report she, "Explained that the inmate's floaters will never go away and they have nothing to do with deep nerves/glaucoma suspect. Explained trauma from being hit with elbow caused increased floaters and ocular migraines can cause floaters." She prescribed new glasses and instructed him to return in a month to evaluate the prescription. *Id.* at 109-110. Mims returned to Dr. McKenzie on December 14, 2009 and she became upset with Mims for not complying with instructions to wear glasses. She noted Mims said his glasses helped when he wore them, but he was not paying attention to Dr. McKenzie's treatment instructions. Therefore Dr. McKenzie dismissed Mims from the clinic, noting that follow-up treatment was not needed and, in all capitals, wrote, "DO NOT SEE FOR 2 YEARS!" Regardless, the prescription for eyeglasses was ordered. *Id.* at 112-114.

Dr. Roland Anderson has submitted an affidavit offering his medical opinion that the medical care, testing and treatment provided to Plaintiff for his eye/headache complaints was appropriate and satisfactory. "He has myopia and has received eyeglass prescriptions as needed for his condition. He also either has ocular migraines or is malingering. Regardless, he has been appropriately examined and treated for his complaints." (Doc. No. 87-1).

### C. Standard of Review

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *County of Sacramento v. Lewis*, 523 U.S. 833 (1998)(citation omitted). In *Butler v. Fletcher*, 465 F.3d 340, 344 (8th Cir. 2006), the United States Court of Appeals for the Eighth Circuit held that deliberate indifference is the "appropriate standard of culpability for all claims that prison officials failed to provide pretrial detainees with adequate food, clothing, shelter, medical care and reasonable safety."

"In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The deliberate indifference standard includes "both an objective and a subjective component: 'The [plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir.1997)).

"Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "A medical need is serious if it is obvious to the layperson or supported by medical evidence." *Moore v. Jackson*, 123 F.3d 1082, 1086 (8th Cir. 1997) (*per curiam*) (internal quotation and citation omitted). "[T]he failure to treat a medical condition does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge." *Long v. Nix*, 86 F.3d 761, 765 (8th Cir.1996). In *Dulany v.*

*Carnahan*, 132 F.3d 1234 (8th Cir.1997), the United States Court of Appeals for the Eighth Circuit said:

> As long as this threshold is not crossed, inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment. Deliberate indifference may be demonstrated by prison guards who intentionally deny or delay access to medical care or intentionally interfere with prescribed treatment, or by prison doctors who fail to respond to prisoner's serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 103, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976). Mere negligence or medical malpractice, however, are insufficient to rise to a constitutional violation. *Id.* at 106, 97 S.Ct. at 292.

*Dulany,* 132 F.3d at 1239. *See also Tlamka v. Serrell*, 244 F.3d 628, 633 (8th Cir. 2001).

### D.     Analysis

In the instant case, Mims has received substantial medical care.  He was seen by health care providers at UAMS, the Jones Eye Institute,  prison medical doctors and optometrists, all on multiple occasions.  Plaintiff received multiple new prescriptions for his glasses, as well as several tests, imaging, and treatment for migraines.  While he is clearly dissatisfied with the level of care provided, and may truly believe he suffers from a grave illness that has gone undiagnosed, the record fails to support Mims' claim of deliberate indifference to his serious medical needs.  Instead, he has alleged, at best, a disagreement with the medical professionals about his treatment.  This does not state a cognizable Eighth Amendment claim under the deliberate indifference standard of *Estelle v. Gamble*.  "The prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Jolly*, 205 F.3d at 1096 (quoting *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir.1995)). "Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Popoalii v. Correctional Medical Services*, 512 F.3d 488, 499 (8th Cir. 2008)(internal quotation marks and citations omitted).  *See also Smith v. Clarke*, 458 F.3d 720, 724 (8th Cir.

2006)("Malpractice alone is not actionable under the [E]ighth [A]mendment."); *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996)(stating that prisoners "do not have a constitutional right to any particular type of treatment[,]" and "nothing in the Eighth Amendment prevents prison doctors from exercising their independent medical judgment").

**V.    CONCLUSION**

For all these reasons, IT IS, THEREFORE, RECOMMENDED that:

1.    Defendants' Motion for Summary Judgment (Doc. No. 62) and Supplemental Motion for Summary Judgment (Doc. No. 85) be GRANTED and this action be DISMISSED with prejudice.

2.    The Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from any Order adopting these recommendations would not be taken in good faith.

DATED this 22nd day of June, 2010.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE